UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Case No.09-21741-CIV-UNGARO

THE JOHN HANCOCK LIFE
INSURANCE COMPANY,

     Plaintiff,

v.

ALAN RUBENSTEIN, Trustee,

     Defendants.

_____/

## ORDER ON MOTION TO DISMISS

THIS CAUSE is before the Court upon Defendant's Motion to Dismiss, filed on July 27, 2009. (D.E. 10.) Plaintiff filed its Response on August 17, 2009 (D.E. 19), and Defendant filed its Reply on August 26, 2009, (D.E. 24).

THE COURT has considered the Motion and the pertinent portions of the record and is otherwise fully advised in the premises.

### Background

Plaintiff the John Hancock Life Insurance Company ("John Hancock") alleges that Defendant Alan Rubenstein, as trustee of the Barbara Cohen Family Trust (the "Trust"), fraudulently obtained a $20,000,000 life insurance policy. (Compl. ¶¶ 8 - 20 & 44.) John Hancock seeks damages and a declaration that the policy is void. (Compl. ¶¶ 8 - 20 & 44.)

In early 2007, Rubenstein[1] submitted an application for a $20,000,000 life insurance policy on the life of Barbara Cohen (the "Application"). (Compl. ¶ 8.) The Application bore the signature of Cohen as the insured and Rubenstein, on behalf of the Trust, as the owner. (Compl. ¶¶ 9 -11.) In the Application, Rubenstein certified the following was true:

> no "understanding or agreement providing for a party other than the [owner] to obtain any right, title or other legal or beneficial interest in any policy issued" existed; and

_____

[1] All references to Rubenstein are in his capacity as trustee of the Trust.

the owner would not "be paying premiums funded by an individual and/or an entity other than the [insured or her employer]."

(Compl. ¶¶ 9 -11.)

On March 5, 2007, John Hancock delivered a $20,000,000 life insurance policy on Cohen's life, which designated the Trust as owner and beneficiary (the "Policy"). (Compl. ¶ 20 & Ex. 1.) John Hancock paid $696,383.38 in broker-commissions on the Policy. (Compl. ¶¶ 23 & 26.) Section 22 of the Policy states, in pertinent part:

**22. INCONTESTABILITY**

This policy shall be in incontestable after it has been in force during the lifetime of the Life Insured for two Policy Years from the Issue Date, except for policy termination, or any provision for reinstatement or policy change requiring evidence of insurability.

(Compl. Ex. 1.)

On October 10, 2008, John Hancock attempted to rescind the Policy, alleging the Application contained material misrepresentations and the owner/beneficiary lacked an insurable interest. (Compl. ¶ 26.) Unable to resolve the dispute, John Hancock filed the Complaint, alleging that the representations in the application were false and that:

The Policy was procured as a speculative investment for the ultimate benefit of a disinterested third party lacking insurable interest in the life of the insured. This was accomplished through the use of an arrangement designed to disguise the lack of insurable interest by interposing a sham trust which purports to have insurable interest in the life of the insured. The use of the trust form is in furtherance of a scheme to evade the public policy against "gaming" through life insurance purchases.

(Compl. ¶¶ 24 & 30.)

The Complaint consists of three counts. Count I seeks a declaration that the Policy is void because the owner/beneficiary lacks an insurable interest. (Compl. ¶¶ 27 - 31.) Count II seeks a declaration that the Policy is effectively rescinded or rescindable because John Hancock relied on the material misrepresentations in the Application in issuing the Policy. (Compl. ¶¶ 32 - 37.) And Count III seeks damages for the injuries John Hancock allegedly suffered as a result of the fraud committed by Rubenstein in obtaining the Policy. (Compl. ¶¶ 38 - 44.)

## Standard of Review

In order to state a claim, Fed. R. Civ. P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief."  While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, such tenet "is inapplicable to legal conclusions."  *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Id.* (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.* (citing *Twombly*, 550 U.S. at 555).

In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'"  *Id.* (quoting *Twombly*, 550 U.S. at 570).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged.  *Id.* (citation omitted).  The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully.  *Id.* (citation omitted).  Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.  *Id.* (internal quotations and citation omitted).  Determining whether a complaint states a plausible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* (citation omitted).

## Discussion

Rubenstein moves to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6), arguing that the Policy's incontestability provision prohibits all three counts and, additionally, that Count I fails to allege sufficient facts to state a claim upon which declaratory relief can be granted.

**I**

Count I seeks a declaration that the Policy is void because the owner/beneficiary lacks an insurable interest. Rubenstein argues Count I both fails to allege sufficient facts to state a claim for declaratory relief and is prohibited by the Policy's incontestability clause.  In 1983, the Florida Supreme Court described Florida's public policy regarding insurable interest as follows:

> In Florida, public policy demands that the beneficiary of an insurance policy covering either life or property have an insurable interest in the life or property insured. In the absence of an insurable interest, the law condemns such policies as mere wagering contracts.

*Life Ins. Co. of Ga. v. Lopez*, 443 So. 2d 947, 948 (Fla. 1983).  The Florida Legislature clarified this public policy in a 2008 amendment to Florida Statute § 627.404.[2]

> Any individual of legal capacity may procure or effect an insurance contract on his or her own life or body for the benefit of any person, but no person shall procure or cause to be procured or effect an insurance contract on the life or body of another individual unless the benefits under such policy are payable to the individual insured or his or her personal representative, or to any person having, at the time such contract was made, an insurable interest in the individual insured. The insurable interest need not exist after the inception date of coverage under the contract.

§ 627.404(1).  Sub-section 2(b) of § 627.404 describes the persons who have an insurable interest in an insured—disinterested third-parties are excluded.

John Hancock claims in Count I that the ultimate beneficiary of the policy was a disinterested third-party.  In support thereof, Count I alleges Rubenstein falsely denied the

---

[2]   The 2008 version of § 627.404 controls in this case despite being enacted after the Policy's delivery date. The amendment was explicitly intended to clarify existing law. "The amendments to § 627.404, Florida Statutes made by this act *are intended to clarify existing law*." Act of May 28, 2008, ch. 2008-36 sec. 2, 2008 Fla. Sess. Law Serv. (emphasis added); *accord* § 627.404 (historical notes); *c.f. Promontory Enter., Inc. v. So. Eng'g & Contracting*, 864 So. 2d 479, 484 (Fla. 5th DCA 2004) (holding that a Florida statute passed during the pendency of a lawsuit and after the formation of a contract retroactively applied where the legislature clearly intended to "clarify existing law"); *but see Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, *4 (M.D. Fla May 26, 2009) ("[T]here is no indication that in the relevant staff analysis or statutory notes that the amendments [to § 627.404 ] were meant to apply retroactively.").

4

existence of any understanding or agreement for any party other than the Trust "to obtain any right title or other legal beneficial interest in [the Policy]" and falsely denied that the Trust would not "be paying premiums funded by an individual and/or an entity other than the [insured or her employer]."  Although § 627.404(1) allows the transfer of beneficial interest after inception of coverage regardless of insurable interest, transfer arrangements which pre-exist the inception of coverage violate the statute unless the transferee has an insurable interest. *See AXA Equitable Life Ins. Co. V. Infinity Fin. Group, LLC*, 608 F. Supp. 2d 1349, 1356 - 57 (S.D. Fla. 2009). Thus, these allegations, accepted as true and viewed in a light most favorable to John Hancock, sufficiently allege the Trust lacked an insurable interest.[3]  *See id.*

Additionally, if the Policy is void *ab initio* because an insurable interest is lacking, the incontestability clause would be of no effect.[4]  *See, e.g.*, *Atkinson v. Wal-Mart Stores, Inc.*, 2009 WL 1458020, *3 (M.D. Fla. May 26, 2009) ("Florida courts have long held that insurable interest is necessary to the validity of an insurance contract and, if it is lacking, the policy is considered a wagering contract and void *ab initio* as against public policy."); *see generally New Testament Baptist Church of Miami v. State Dept. of Transp.*, 993 So. 2d 112, 116 (Fla. 4th DCA 2008) (noting that contracts offensive to public policy are void *ab initio*).  Indeed, other courts have reached this result.  *See, e.g.*, *Wood v. New York Life Ins. Co.*, 783 F. 2d 990, 996 (11th Cir. 1986) (applying Georgia law and holding that incontestability clause is of no effect where policy is void for lack of an insurable interest).  Thus, the incontestability clause does not prohibit Count I. Accordingly, the motion to dismiss Count I must be denied.

---

[3]  The Trust Agreement attached to Reubenstein's Motion to Dismiss does not necessarily contradict these allegations.  Regardless of the insurable interest of the Trust's beneficiary, that beneficiary may have impermissibly agreed to transfer his interest prior to the inception of coverage.

[4]  John Hancock correctly points out that, although Florida statute § 627.455 prescribes the incontestability clause language required in all life insurance policies, it does not create a statutory incontestability period.

**II**

Count II seeks a declaration that the Policy is effectively rescinded or rescindable because John Hancock relied on the material misrepresentations in the Application. Rubenstein argues that Florida statute § 627.455 and the Policy's incontestability clause prohibit rescission of the Policy.[5]  Section 627.455 states:

> Every insurance contract shall provide that the policy shall be incontestable after it has been in force during the lifetime of the insured for a period of 2 years from its date of issue except for nonpayment of premiums and except, at the option of the insurer, as to provisions relative to benefits in event of disability and as to provisions which grant additional insurance specifically against death by accident or accidental means.

"The Florida Supreme Court has explained that incontestability clauses, such as the one contained in § 627.455, are in the nature of statutes of limitations." *Allstate Life Ins. Co. v. Miller*, 424 F.3d 1113, 1115 (11th Cir. 2005) (citing *Prudential Ins. Co. of Am. v. Prescott*, 176 So. 875, 878 (1937)).  "As such, while incontestability clauses recognize fraud and all other defenses, they provide a reasonable time in which they may be, but beyond which they cannot be, established." *Id*. (quotations omitted).  Thus, under the language required by § 627.455, "insurers are barred from attempting to rescind or cancel the insurance policy based on allegations that the insured engaged in fraud or misrepresentation." *Id.* (citations omitted). Indeed, § 627.455 has been described as "the Florida rule that insurance policies are incontestable after they have been in effect for two years." *Bankers Sec. Life Ins. Soc'y v. Kane*, 885 F.2d 820, 821.

Clearly, § 627.455 prohibits rescission for fraudulent misrepresentation after the incontestability period has commenced.  *See, e.g.*, *Miller*, 424 F.3d at 1115; *Allstate Life Ins. v. Fox*, 700 So. 2d 49, 49 (Fla. 5th DCA 1997) ("The clause required by statute [§ 627.455 ]

---

[5]  The Policy's incontestability clause, Section 22, although not verbatim to that required by § 627.455, is effectively identical for present purposes.  Accordingly, the analysis of the statutorily required language is identical to that of Section 22.

prevents the insurer from raising as a defense to payment of a claim, any misrepresentation a decedent made in the policy application when that decedent survives at least two years from the date the policy is issued."). Here, there is no dispute that the incontestability period has commenced.[6] And to the extent the Policy, and the incontestability clause, is void *ab initio* for lack of an insurable interest, this claim is moot and no actual controversy could exist. *See* 28 U.S.C. § 2201. Accordingly, Count II must be dismissed.

### III

In Count III, John Hancock brings a claim for fraudulent misrepresentation and seeks monetary damages. Rubenstein argues that § 627.455 similarly prohibits such an action after the incontestability period has commenced. However, the Court does not reach the issue.[7] If the Policy, and the incontestability clause, is void *ab initio*, John Hancock may still have a fraud claim for monetary damages, e.g., the $696,383.38 commission. *See* Fed. R. Civ. P 8(d)(2) (allowing alternative claims for relief). Unlike the claim in Count II, this fraud claim seeks relief apart from a rescission of the policy and is not moot if the Policy is void for lack of insurable interest. Thus, the motion to dismiss Count III must be denied.

Accordingly, it is hereby

ORDERED AND ADJUDGED that the Motion to Dismiss (D.E. 10) is GRANTED WITHOUT PREJUDICE as to Count II and DENIED as to Counts I and III. Plaintiff may amend its Complaint in accordance herewith on or before September 14, 2009.

---

[6] John Hancock argues that Rubenstein is estopped from relying on the incontestability clause. However, this argument relies on facts contained in a separately filed affidavit and outside of the Complaint and therefore is not considered in a motion to dismiss under Fed. R. Civ. P. 12(b)(6).

[7] Nonetheless, the Court notes that if an incontestability provision prohibits rescission based on fraud, an affirmative tort action based on the same fraud is generally prohibited because such a "suit would merely provide a different means to challenge the validity of the insurance contract." *See Kane*, 885 F.2d at 822. *See also* 17 COUCH ON INSURANCE § 240:65 (3d ed. 2009) ("If a fraud defense to the validity of a policy is bared by incontestability, then a separate fraud action alleging the same grounds is also barred.") (citing *Kane*, 885 F.2d at 822).

DONE AND ORDERED in Chambers, Miami, Florida, this 31st day of August, 2009.

_____
URSULA UNGARO
UNITED STATES DISTRICT JUDGE

copies provided:
counsel of record